UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

MANUEL SANTOS,

                Petitioner,

   -against-

UNITED STATES OF AMERICA,

                Respondent.

------------------------------------------------------------------ X

13-CV-3098 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Petitioner Manuel Santos, proceeding pro se, moves to vacate his conviction pursuant to 28 U.S.C. § 2255. Petitioner argues that his trial and appellate counsel rendered ineffective assistance by failing to object to and appeal (1) the violation of his right to a speedy trial and (2) the presence of a Drug Enforcement Administration ("DEA") agent at the government's table throughout his trial. Petitioner also argues that his conviction and sentence must be invalidated based on the subsequent Supreme Court decision in Alleyne v. United States, 133 S. Ct. 2151 (2013). For the reasons set forth below, I find that petitioner has not established that his trial and appellate counsel provided ineffective assistance, and petitioner is not entitled to relief under Alleyne because the decision does not apply retroactively to cases on collateral review. Accordingly, the petition is denied.

## BACKGROUND

On May 18, 2001, petitioner was indicted in the Eastern District of New York on two counts of murder while engaging in a cocaine distribution conspiracy, in violation of 21 U.S.C. § 848(e)(1)(A), and one count of using a firearm in furtherance of crimes of violence, in violation

1

of 18 U.S.C. § 924(c)(1)(A)(iii). See United States v. Santos, No. 01-CR-537, Dkt. #7; Mem. of Law in Opp'n to Pet. ("Opp'n"), Dkt. #16, Ex. 2. After a trial, a jury convicted petitioner of all three counts on November 19, 2004. Santos, No. 01-CR-537, Dkt. #47. On October 28, 2005, the Honorable David G. Trager sentenced petitioner to two concurrent terms of life imprisonment for the murders, as well as a 120-month sentence on the firearms count to run consecutively. Santos, No. 01-CR-537, Dkt. #67.

On direct appeal, petitioner challenged the application of the murder statute to his case and the sufficiency of the evidence. United States v. Santos, 541 F.3d 63, 65 (2d Cir. 2008). The Second Circuit affirmed petitioner's convictions on September 2, 2008. Id. The Supreme Court denied his petition for a writ of certiorari on January 12, 2009. Santos v. United States, 555 U.S. 1122 (2009). Petitioner filed two motions for a new trial pursuant to Federal Rule of Criminal Procedure 33, citing newly discovered evidence and a violation of Brady v. Maryland, 373 U.S. 83 (1963). The district court denied both motions, United States v. Santos, No. CR-01-537 (DGT), 2010 WL 2985913 (E.D.N.Y. July 27, 2010), and the Second Circuit affirmed by summary order on June 19, 2012, United States v. Santos, 486 F. App'x 133 (2d Cir. 2012).

Petitioner filed this § 2255 petition on May 24, 2013, raising claims of ineffective assistance of counsel. Pet., Dkt. #1.[1] On August 5, 2013, petitioner filed a supplemental motion raising a claim under Alleyne. Supplemental Mot. to Vacate, Dkt. #5. The court ordered the

---

[1] The petition is dated as placed in the prison mailing system on May 17, 2013. Pet., Dkt. #1, at ECF 13. The court notes that petitioner's claims appear to be untimely. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress imposed a one-year statute of limitations on filing a § 2255 petition, which in this case runs from "the date on which the judgment of conviction became final." 28 U.S.C. § 2255(f)(1). Petitioner's conviction became final on January 12, 2009, when the Supreme Court denied his petition for a writ of certiorari. United States v. Leon, 203 F.3d 162, 163 (2d Cir. 2000). Petitioner did not file this § 2255 petition until May 17, 2013, over four years later. Petitioner asserts that his petition is timely because he filed it within one year after the Second Circuit affirmed the denial of his Rule 33 motions. Pet. at ECF 12. However, at least five circuit courts have held that filing a Rule 33 motion does not toll the statute of limitations for a § 2255 petition. See United States v. Redd, 562 F.3d 309, 312 (5th Cir. 2009) (collecting cases). The government has not raised a timeliness challenge. The Second Circuit has held that the statute of limitations for a § 2255 petition is not a jurisdictional bar and can be waived. Green v. United States, 260 F.3d 78, 85 (2d Cir. 2001). Therefore, the court will consider petitioner's claims on the merits.

government to respond to the petition, Dkt. #2, and directed petitioner's trial and appellate counsel to file affidavits responding to the allegations of ineffective assistance, Dkt. #7.

## DISCUSSION

### I. Petitioner's Ineffective Assistance of Counsel Claims

Petitioner challenges his conviction on the grounds that he received constitutionally ineffective assistance from his trial and appellate counsel.[2] To establish a violation of the Sixth Amendment right to effective assistance of counsel, petitioner must meet the two-prong test established by Strickland v. Washington, 466 U.S. 668 (1984). First, petitioner must demonstrate that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks omitted). Second, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 131 S. Ct. 770, 792 (2011).

The Strickland standard also applies to claims of ineffective assistance of appellate counsel. See, e.g., Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001). On appeal, counsel "does

---

[2] The court will construe petitioner's ineffective assistance of counsel claims as relating only to Louis M. Freeman, who represented him at trial, and Philip R. Schatz, who represented him on direct appeal. The petition also lists attorneys Michael A. Young, who represented petitioner on his Rule 33 motions, and Bobbi C. Sternheim, who represented petitioner on the appeal of the district court's denial of the Rule 33 motions. Pet. at ECF 11. Young and Sternheim both assert in their affidavits that the issues raised in this petition fall outside the scope of the Rule 33 motions and appeal. Opp'n, Ex. 19 & 20. The court agrees that the Rule 33 motions and appeal related to distinct issues that are not relevant to this petition. Moreover, petitioner's reply only asserts ineffective performance by counsel at his trial and on direct appeal, not on his Rule 33 motions and appeal. Accordingly, the court will not consider petitioner's ineffective assistance of counsel claims in relation to either Young or Sternheim.

not have a duty to advance every nonfrivolous argument that could be made." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). To establish constitutionally inadequate performance of appellate counsel, a petitioner must show "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id.

### A. Right to Speedy Trial

For his first ineffective assistance of counsel claim, petitioner asserts that his attorneys failed to object to, and appeal, the denial of his right to a speedy trial. Pet. at ECF 4.

The Sixth Amendment guarantees all criminal defendants "the right to a speedy and public trial." U.S. Const. amend. VI. A court must balance four factors to determine whether a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972). If the court finds a violation, dismissal is the mandatory remedy. Strunk v. United States, 412 U.S. 434, 440 (1973).

While petitioner asserts his speedy trial claim on constitutional grounds, his petition could also be construed to raise a statutory claim under the Speedy Trial Act. The statute provides that a federal defendant's criminal trial must begin within seventy days after the filing of the indictment or the first court appearance, whichever is later. 18 U.S.C. § 3161(c)(1). Several categories of delay are excluded from this seventy-day calculation. 18 U.S.C. § 3161(h). As relevant here, a period of delay is excluded if the court grants a continuance because "the ends of justice served by [the continuance] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The court must make express findings on the record to support such a continuance. Id.; see Zedner v. United States, 547 U.S. 489, 506 (2006). In determining whether a continuance based on the ends of justice is warranted, a court

4

can consider, among other factors, "[w]hether the case is so unusual or so complex . . . that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(7)(B)(ii). A defendant who is not brought to trial within the statutory time limit can move to dismiss. 18 U.S.C. § 3162(a)(2). Upon such a motion, the court must decide whether to dismiss the case with or without prejudice, taking into consideration factors such as "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." Id.

In this case, it is undisputed that a 41-month period elapsed between petitioner's arraignment in May 2001 and his trial in November 2004. During the majority of this period, the parties were waiting for the government to decide whether it would seek the death penalty. The case included potential capital charges, since the government alleged that petitioner carried out a botched murder-for-hire in which he mistakenly killed two innocent victims, including a fourteen-year-old boy. Opp'n 4. After petitioner's arraignment, his trial counsel requested several adjournments to review discovery, investigate the case, and prepare a mitigation report to argue against the death penalty. Opp'n 5-8. In June 2002, the defense submitted its mitigation report to a death penalty review committee at the U.S. Attorney's Office. Opp'n, Ex. 9 at 2-3. In September 2003, the committee sent its recommendation to the Department of Justice ("DOJ"), which makes the final decision. Opp'n, Ex. 13 at 2. Meanwhile, during this period, petitioner was arrested in June 2002 on unrelated state manslaughter charges, underwent a trial in state court, and was convicted in September 2003. Opp'n, Ex. 10. At the next status conference on March 18, 2004, at the request of defense counsel, the court gave the government a thirty-day deadline to decide whether to seek the death penalty. Opp'n, Ex. 13 at 2, 4. In April 2004, the

DOJ decided not to seek the death penalty, and the court scheduled the trial. Opp'n, Ex. 14 at 2.

Based on this record, it is clear that petitioner's trial counsel was not ineffective for failing to assert his speedy trial rights. First, any motion on constitutional grounds would have failed on the merits. Under an analysis of the Barker factors, the length of the delay would have weighed in favor of petitioner, but the other factors would have all weighed against him. As to the second factor, the delay could largely be attributed to valid reasons, including the defense's need for time to prepare a mitigation report and the government's review to determine whether to seek the death penalty. As to the third factor, petitioner did not formally assert his right to a speedy trial at the time. He did express concerns about his speedy trial rights on several occasions, but ultimately, after consultation with counsel, he consented to each adjournment. See Opp'n, Ex. 3, at 5-10; Ex. 4, at 4-7; Ex. 15, at 3, 7; Declaration of Louis M. Freeman ("Freeman Decl."), Opp'n, Ex. 17, at ¶ 7. Finally, as to the fourth factor, petitioner did not suffer prejudice from the delay. There is no suggestion that the delay resulted in the loss of witnesses or evidence or otherwise impaired petitioner's ability to present a defense. See Barker, 407 U.S. at 532 (calling impairment of the defense "the most serious" form of prejudice). Nor could petitioner assert prejudice from his prolonged pretrial detention, since he was facing state court proceedings during a significant period of the time that he awaited his federal trial. Courts have found no constitutional violation in cases similar to this one. See, e.g., United States v. Howard, 443 F. App'x 596, 599 (2d Cir. 2011) (43-month delay was due to valid reasons, defendant did not formally assert the right, and defendant had not shown prejudice); United States v. Abad, 514 F.3d 271, 274-75 (2d Cir. 2008) (31-month delay was due in part to death penalty review and defendant had not shown prejudice); United States v. Williams, 372 F.3d 96, 112-13 (2d Cir. 2004) (three-year delay was largely due to investigation of complex case and defendant had not

shown prejudice). Petitioner's trial counsel "could not therefore have been ineffective for failing to make a motion that would have been futile." Abad, 514 F.3d at 276.

A motion to dismiss under the Speedy Trial Act would similarly have been fruitless. For at least part of the 41-month delay, the court granted continuances to serve the ends of justice based on the complexity of the case, and both the government and defense consented to the exclusion of these periods of time from Speedy Trial Act calculations. See 01-CR-537 Docket Sheet, Opp'n, Ex. 1; Freeman Decl. ¶¶ 12-13. As the government concedes, it appears that the court did not make findings on the record regarding the period of time between October 24, 2002, and March 18, 2004. Opp'n 26. However, it is not necessary to determine whether this time counted toward the Speedy Trial Act timetable. Even if petitioner's trial counsel had brought a successful motion to dismiss under the Speedy Trial Act, all of the statutory factors would have strongly pointed toward a dismissal without prejudice. The charges in the case were serious, including two homicides; the circumstances leading to the delay were valid; and the re-prosecution of petitioner would have served the interests of justice. After a dismissal without prejudice, the government would have been free to bring a new indictment on the same charges. There is simply no reason to expect trial counsel to bring a motion that would have only served to further prolong the proceedings. See Zedner, 547 U.S. at 499 ("When an indictment is dismissed without prejudice, the prosecutor may of course seek—and in the great majority of cases will be able to obtain—a new indictment."); Jones v. United States, 543 F. App'x 67, 71 (2d Cir. 2013) ("[Counsel's] decision not to bring a motion to dismiss that was unlikely to succeed and would inevitably lead to further delay was perfectly reasonable.").

Moreover, it appears from the record that petitioner's trial counsel had strategic reasons not to assert petitioner's speedy trial rights. Initially, counsel determined that his client would

benefit from more time to review the discovery, investigate the case, and prepare the mitigation submission. Freeman Decl. ¶¶ 4, 6. While the government was reviewing the case to determine whether to seek the death penalty, petitioner's trial counsel made the judgment that it would be "reckless" to push the trial forward. Id. ¶ 7. Eventually, after the process had taken almost three years, and after consultation with other death penalty lawyers, counsel asked the court to set a deadline for the government to make its decision. Opp'n, Ex. 13, at 2-4. Counsel's determination about when to pressure the government to finish its review of the case, knowing that he ran the risk of harming his client by prompting an unfavorable decision, is exactly the type of strategic choice that a court should not second-guess. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). In this case, trial counsel's decisions worked to petitioner's favor, since the government decided not to pursue the death penalty.

Accordingly, petitioner has not satisfied either prong of the Strickland test. Trial counsel's decision not to raise a speedy trial challenge did not fall below an objective standard of reasonableness because it was a defensible strategic choice. Petitioner cannot show prejudice, because a motion on constitutional grounds would likely have been denied, and a motion on Speedy Trial Act grounds would likely have resulted in a dismissal without prejudice and a new indictment on the same charges.

I also find that appellate counsel's failure to raise a speedy trial challenge on appeal did not constitute ineffective assistance. Petitioner's appellate counsel asserts that he consulted petitioner regarding the selection of issues to appeal, and petitioner did not mention the speedy trial issue. Decl. of Philip R. Schatz ("Schatz Decl."), Opp'n, Ex. 18, ¶ 6. Counsel further asserts that his usual strategy is to raise only the strongest arguments and that he does not normally

consider an unpreserved objection to be a strong ground for appeal. Id. at ¶ 12. Here, appellate counsel made an entirely reasonable strategic choice not to raise a constitutional speedy trial claim, since the issue had not been preserved at the trial level and would have been unlikely to succeed on the merits. Nor could appellate counsel have raised a claim under the Speedy Trial Act, since the statute provides that the failure to move to dismiss prior to trial constitutes a waiver. 18 U.S.C. § 3162(a)(2); see Abad, 514 F.3d at 274 (unpreserved claims under the Speedy Trial Act are waived and cannot be asserted on direct appeal); Schatz Decl. ¶¶ 9-10. Therefore, petitioner has not shown that his appellate counsel provided ineffective assistance.

B.  **Presence of DEA Agent at Government's Table**

Petitioner also argues that his trial and appellate counsel were ineffective for failing to object to, and appeal, the presence of DEA agent Brian Fleming at the government's table throughout his trial. Since Fleming also served as a government witness, petitioner argues that his presence at the table enhanced Fleming's "credibility with the jury" and violated "the prohibition against the prosecution vouching for the credibility of its witnesses." Pet. at ECF 5.

Under Federal Rule of Evidence 615, the court must exclude witnesses from the courtroom, either at a party's request or on its own, to prevent them from hearing other witnesses' testimony. Yet the rule specifically provides an exception if the witness is "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney." Fed. R. Evid. 615(b). The Second Circuit has held on numerous occasions that this exception applies to a law enforcement agent who serves as the representative of the government. United States v. Rivera, 971 F.2d 876, 889 (2d Cir. 1992) ("It is within a trial court's discretion to exempt the government's chief investigative agent from sequestration . . . and it is well settled that such an exemption is proper under [Rule 615(b)]."); see also, e.g.,

United States v. Figueroa, 529 F. App'x 87, 88 (2d Cir. 2013) (district court did not abuse its discretion in exempting FBI agent from sequestration under Rule 615); United States v. Berrios, 170 F. App'x 760, 761 (2006) (same). Therefore, any objection to Fleming's presence at the government's table would have been unsuccessful. Petitioner's trial counsel was not ineffective for failing to make a meritless objection, and his appellate counsel was not ineffective for failing to raise a meritless argument on appeal.

### C. Petitioner's Request for Hearing

In his reply, petitioner requests an evidentiary hearing on his ineffective assistance of counsel claims. Reply, Dkt. #18, at ECF 5.[3] When deciding a § 2255 petition, a court must "grant a prompt hearing" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The statute does not, however, require the court to hold a full evidentiary hearing in every case. A court has discretion to decide a petition based on the written record, including affidavits, when a full testimonial hearing "would add little or nothing to the written submissions." Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001). Here, all of the facts relevant to petitioner's speedy trial claim can be determined based on the written record. There are no contested issues of fact that turn on credibility determinations of witnesses. I find that a hearing is not warranted because petitioner cannot establish a plausible claim for relief and there are no material facts in dispute. See Puglisi v. United States, 586 F.3d

---

[3] Petitioner also argues that his counsel's affidavits should be stricken from the record because they disclosed privileged information about their representation of him without his informed consent. Reply at ECF 4-5. The Second Circuit has held that "a district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of life testimony, affidavits, or briefs." Sparman v. Edwards, 154 F.3d 51, 52 (2d Cir. 1998). Furthermore, "[i]n cases where a habeas petitioner alleges ineffective assistance of counsel, courts routinely find that the petitioner 'puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications.'" Aladino v. United States, No. 09-cv-926 (CBA), 2011 WL 6131175, at *2 (E.D.N.Y. Dec. 8, 2011) (quoting United States v. Marks, 764 F. Supp. 2d 585, 586-87 (W.D.N.Y. 2011)). I find that petitioner's former counsel did not disclose any information in their affidavits regarding their representation beyond the information necessary to respond to petitioner's claims.

209, 213 (2d Cir. 2009).

Accordingly, petitioner's claims of ineffective assistance of trial and appellate counsel are denied based on the written record.

## II.  Petitioner's <u>Alleyne</u> Claim

In his supplemental motion, petitioner argues that the Supreme Court's decision in <u>Alleyne</u> renders his conviction invalid. In <u>Alleyne</u>, the Court held that any fact that increases the mandatory minimum sentence for a crime must be found by a jury beyond a reasonable doubt. 133 S. Ct. at 2155. A defendant who is convicted of using a firearm in furtherance of a crime of violence is subject to a higher mandatory minimum sentence if the firearm was discharged. 18 U.S.C. § 924(c)(1)(A)(iii). Petitioner argues that his conviction and sentence violated the rule of <u>Alleyne</u> because the court did not submit to the jury the question of whether he had discharged a firearm. Yet the Second Circuit recently joined other circuits in holding that the rule of <u>Alleyne</u> does not apply retroactively on collateral review. <u>United States v. Redd</u>, 735 F.3d 88, 92 (2d Cir. 2013) (per curiam). Therefore, petitioner is not entitled to relief on this claim.

## CONCLUSION

As set forth above, petitioner's motion to vacate his conviction and sentence under 28 U.S.C. § 2255 is denied in its entirety. Furthermore, because petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 29 U.S.C. § 2253(c)(3), no Certificate of Appealability will issue. Petitioner may seek such a certificate from the Second Circuit Court of Appeals. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

/S/ Judge Allyne R. Ross

Allyne R. Ross
United States District Judge

Dated: April 17, 2014
Brooklyn, New York

**SERVICE LIST:**

Petitioner
Manuel Santos
# 55382-053
USP Coleman II
U.S. Penitentiary
P.O. Box 1034
Coleman, FL 33521